. (77 Misc. Rep. 535.)

PEOPLE ex rel. NEW YORK CENT. & H. R. R. CO. v. SULLIVAN et al.,
State Board of Tax Com'rs.

(Supreme Court, Special Term, Erie County. September, 1912.)

TAXATION (§ 496*)—REVIEW—CERTIORARI—RETURN—TAXING SPECIAL FRAN-
CHISES.

On the return to a writ of certiorari to review the determination of
the state board of tax commissioners taxing a special franchise of a rail-
road company in crossing public· streets, setting forth the manner of
arriving at the value of such franchise, whether the occupation is at
right angles to a crossing, or lengthwise, or otherwise, the return is suf-
ficient, and a motion for another return, on the ground that the modus
·operandi had not been given, will be denied.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 890–910; Dec.
Dig. § 496.*]

Certiorari by the People, on the relation of the New York Central
& Hudson River Railroad Company, against William J. Sullivan and
others, constituting the State Board of Tax Commissioners. Motion
to direct the filing of a further return denied.

Alfred L. Becker, of Buffalo, for relator.

C. R. McSparren, of Buffalo, Deputy Atty. Gen., for respondents.

WOODWARD, J.  The relator, the New York Central & Hudson
River Railroad Company, moves this court for an order directing the
respondents to make and file a further return to the writ of certiorari
issued in the matter; the .contention being that, while the return of
the writ describes. the method of arriving at the valuation of the street
crossings, it fails to state the method by which the valuations of other
street occupations, or lengthwise occupations, are arrived at by the
respondents.  To quote the language of the relator, its position is—

"not that the return is inadequate or vague, or an insufficient statement of
the method of assessment, but rather that it simply does not cover, and was
not intended ·to cover, the lengthwise occupations. The situation is there-
fore, practically, that no return has been made with respect to the lengthwise
occupations, attempting or purporting to state the modus operandi of those
valuations."

It is conceded that subdivisions numbered I, II, and IV might relate
to lengthwise as well as crossing occupations; but it is urged that
subdivision III is the only part relating to the method of valuation,
and that this is confined by its language to "the special franchise here-
in to cross a street, highway, or public place," etc.  This appeals to
us as a refinement of reasoning rather than a practical question, for
a reading of the return clearly indicates an intention on the part of
the respondents to set forth the method of arriving at the valuation
of special franchises, whether the occupation is of a crossing or of a
lengthwise, or diagonal, or circular character, and the method de-
scribed is as applicable to the one as the other.  The statute under
which the special franchise taxes are assessed makes no mention of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

crossings. It merely defines the terms "land," "real estate," and "real property" as including—

"the land itself above and under water, * * * all surface, underground or elevated railroads, including the value of all franchises, rights or permission to construct, maintain or operate the same in, under, above, on or through, streets, highways or public places; all railroad structures, substructures and superstructures, tracks and iron thereon; branches, switches and other fixtures permitted or authorized to be made, laid or placed in, upon, above or under any public or private road, street or ground," etc.

It is the occupation of a public street, highway, or park place which constitutes the special franchise, and, the street crossings being the most numerous, it is but natural that the language used should refer to crossings; but it is hardly within the range of practical construction that the references to crossing "a street, highway or public place" should be confined strictly to a direct crossing. A public place would be crossed if but one track of the railroad should encroach upon it in any degree, and it will probably be found that, generally speaking, lengthwise occupation results in the crossing of the highway or public place. Taking this view of the use of the word "crossing," the return declares:

"That, in arriving at the intangible element of value of the right or privilege of a railroad to cross a street, highway, or public place, the length of the occupancy was also taken into consideration. Crossings from 50 to 80 feet were considered standard, and for crossings of greater or less length 10 per cent. of the intangible value of a standard crossing was added thereto or subtracted therefrom for each 20 feet or fractional part thereof."

That is, the length of the occupancy was determined upon the basis of a standard crossing of 50 to 80 feet, and whether that was a direct crossing, or a mere occupation lengthwise, or diagonally, was incidental. If it was less than 50 feet of occupation, the valuation was reduced 10 per cent. for each 20 feet or fractional part thereof, and if the occupation was above 80 feet, there was 10 per cent. added for each 20 feet or fractional part thereof; the other conditions, on which the valuations of the standard crossing were based, being given due weight as set forth in detail in the return. It is difficult to understand how the respondents could have made a more concise and complete return than has been made in the matter now before us for all practical purposes, and we are not disposed to grant this motion.

While People ex rel. New York, Ontario & Western R. Co. v. Woodbury, 204 N. Y. 608, 97 N. E. 1114, did not discuss this question, it was necessarily involved in the determination, and in the absence of authority may be relied upon to justify the holding here made, if any question can be raised as to the reasoning on which it is based.

The motion is denied, with costs.

Motion denied, with costs.